Receipt number 9998-4172324

# In the United States Court of Federal Claims

FILED
SEP 8 2017
U.S. COURT OF FEDERAL CLAIMS

**KENNETH LEE SMITH and CONSTANCE SMITH,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

**Case No.** 17-1215 L

**Judge** ____________

## COMPLAINT

Plaintiffs Kenneth Lee Smith and Constance Smith file this complaint and claim for the taking of their real and personal property. They allege that the actions of the U.S. Army Corps of Engineers ("Corps") worked a taking of their property, entitling them to just compensation under the Fifth Amendment to the United States Constitution.

## I. INTRODUCTORY STATEMENT.

In the wake of Hurricane Harvey, the U.S. Army Corps of Engineers faced a tragic, unenviable choice. The Corps could continue to stand by as water continued to accumulate in the Addicks and Barker Reservoirs on Houston's west side, threatening the further flooding of upstream communities and creating a risk that water would overtop and weaken the earthen-levee systems. Or, instead, the Corps could intentionally open the floodgates of the two dams and flood particular downstream neighborhoods in the Buffalo Bayou watershed. They chose to flood the downstream neighborhoods, including the area where the Smith family lives.

The government's choice to take a flooding easement across private property in those neighborhoods was predictable and indeed predicted. In the years leading up to this particular flood event, government planners knew that Houston's existing flood-control reservoir system was woefully inadequate and that the failure to upgrade the system risked putting the Corps into the situation it found itself on or about August 28, 2017. It could either protect certain communities and the levee system itself—or it could intentionally flood particular properties downstream that, if not for the dam releases, would not have flooded.

This claim is not about laying blame on the Corps. Rather, it is about enforcing the rule that when the community through its government takes private property from some to benefit others, the community must pay for the taking. As the U.S. Supreme Court explained in another case involving flooding, the Takings Clause of the Fifth Amendment is "'designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Arkansas Fish and Game Comm'n v. United States*, 568 U.S. 23, 31 (2012) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)). The Smiths ask the government to make good on that promise.

## II. JURISDICTION.

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1491(a)(1), as this action seeks monetary compensation from the United States pursuant to the Fifth Amendment of the U.S. Constitution.

2. The Government and the Corps have consented to venue in the Court of Federal Claims for takings claims.

**III. PARTIES.**

3. Plaintiffs Kenneth "Kenny" and Constance "Connie" Smith are homeowners who reside in Houston, Texas. The Smiths own a single-family home located at 518 Kickerillo Drive, Houston, Texas 77079, more particularly described as Lot 49, Lot 23, Nottingham Forest, Section 2. Their house is estimated to be 2,586 square feet on a 9,000 square foot lot, approximately valued in excess of $750,000. They have owned this home since July 2, 2007. Kenny and Connie Smith are both retired and are on a fixed income. Connie, a breast cancer survivor, is a retired schoolteacher from Spring Branch Independent School District. Their retirement security depended on the equity of their house, which they recently remodeled.

4. Defendant is the United States Government, including the Corps and any federal, state, or local agency or instrumentality working under the auspices of the federal government, all of whom may be served through the National Courts Section, Commercial Litigation Branch, Civil Division U.S. Department of Justice, Washington, DC 20530; telephone: 202-514-7300.

**IV. NO PREVIOUS LAWSUITS.**

5. Plaintiffs have not begun any other lawsuits in state or federal court dealing with the same or similar facts involved in this action.

6. Plaintiffs note the existence of two class action suits recently filed with this Court related to Houston flooding: *Banes et al v. United States*, 1:17-CV-01191-

MBH, and *Bouzerand et al v. United States*, filed on September 5, 2017. The Court has not certified either class action, and Plaintiffs currently do not plan to become members of any class involving the claims or facts involved in this action.

**V. STATEMENT OF THE CLAIM.**

7. On August 25, 2017, Hurricane Harvey, a category-4 hurricane, made landfall on the Texas coast, bringing torrential rainfall, wind speeds topping 130 mph, and widespread flooding.

8. Over 40 inches of rainfall fell on Houston in the next several days, with the Harris County Flood Control District estimating that over a trillion gallons of water fell on the county in just four days. Even so, the Plaintiffs' house had not flooded during this time.

9. After the rainfall stopped, waters began to rise in coastal regions from the storm surge created by Harvey. Houston simultaneously experienced catastrophic inland flooding.

10. Although many thousands had been flooded and damaged by Harvey, Plaintiffs' house had not flooded.

11. The Addicks and Barker Reservoirs are owned and operated by the Corps. These two dams are located on Houston's west side and are designed to store and release accumulated water into creeks near the dams and eventually into Buffalo Bayou to help prevent catastrophic flooding to downstream neighborhoods, downtown Houston, and the Houston shipping channel.

12. Plaintiffs live near the Addicks and Barker reservoirs. Plaintiffs' house has historically never flooded and is not in the 100-year floodplain.

13. As Harvey poured rain on Houston, the Addicks and Barker reservoirs filled to near-peak capacity as of August 27, 2017.

14. The Corps faced a choice. They could release water from Addicks and Barker dams and flood properties beneath the two dams, or they could choose not to increase the releases and thereby risk flooding other communities and also risk overtopping the earthen-levee system, which could lead to a complete failure of the dams.

15. On August 28, 2017, the Corps announced they would open the floodgates at both Addicks and Barker dams that morning. Col. Lars Zetterstrom, the Corps' Galveston district commander, explained the purposes of the intentional releases: "If we don't begin releasing now, the volume of uncontrolled water around the dams will be higher and have a greater impact on the surrounding communities."

16. The Corps acknowledged on August 28, 2017 that the homes in the Buffalo Bayou area would be affected, stating that, "according to Corps models, at this rate the first home in Addicks Reservoir will be impacted in 2 to 4 hours and the first home in Barker Reservoir will be impacted later this morning."

17. The Corps' models included Plaintiffs' property in the area that would be affected by the Addicks and Barker floodgate releases.

18. The Corps opened the floodgates slowly at first, and then released 7,500 cubic feet of water per second (cfs) from Barker dam, and 6,300 cfs from Addicks,

intentionally flooding thousands of homes below the dams, choosing to sacrifice some homes for the greater public good.

19. Kenny and Connie Smith heard about the water release through friends and neighbors and barely had enough time to evacuate themselves by boat on August 28, 2017.

20. Because the Corps abruptly made the decision to release the water from the dams, Plaintiffs were largely unable to mitigate the damage to their real and personal property from the intentional flooding.

21. The next day, on August 29, the Smiths returned to the house by boat to discover water in the yard but no water inside the house. By the next day, on August 30, they discovered standing water more than two feet deep throughout the lower floor of their house.

22. The floodwaters remain. The only way to access the property, as of the filing of this Complaint, is still by boat. Because water is impairing access to the house, Plaintiffs cannot mitigate the ongoing floodwater damages.

23. In the decade before this flood event, government planners recognized that Houston's existing flood-control reservoir system was underfunded and inadequate. The Corps rated Houston's reservoir and spillway systems as "extremely high-risk" infrastructure. In 2015, the Corps paid a third-party contractor $72 million to upgrade some of Houston's spillways, with completion scheduled in 2019. Without substantial upgrades to the existing Corps dam and reservoir systems, the Corps

recognized that it may have to rely on intentional flooding of the neighborhoods in the Buffalo Bayou watershed as a mitigation tactic during major flood events.

24. As a result of the taking, Plaintiffs have suffered damage to personal property, such as personal vehicles and personal effects; damage to home improvements and the structures on the property; and decreased market value of Plaintiffs' real property resulting from the Corps' decision to appropriate Plaintiffs' property as a flooding easement.

## VI. CAUSE OF ACTION: TAKINGS CLAIM UNDER THE FIFTH AMENDMENT.

25. Plaintiffs incorporate all of the allegations made above.

26. The Fifth Amendment to the U.S. Constitution provides that when the government takes private property for public use, the government must pay just compensation.

27. Under Texas law, Plaintiffs had private property interests in the personal and real property located at their residence. The Corps' intentional flooding described above took and destroyed Plaintiffs' private property.

28. Plaintiffs had distinct, reasonable, and investment-backed expectations that their properties would not be subject to flooding, in line with historical flooding patterns.

29. Defendant's decisions and actions caused the Addicks and Barker reservoirs' floodgates to open on August 28, 2017.

30. As a direct result of Defendant's decisions and actions, Plaintiffs' home and private property were flooded, which caused damage to personal property, such as

personal vehicles and personal effects; damage to home improvements and the structures on the property; and decreased market value to the real estate resulting from the Corps' decision to appropriate Plaintiffs' property as a flooding easement. Additionally, Defendant's decisions and actions deprived Plaintiffs of the use, occupancy, and enjoyment of their homes and properties.

31. Defendant's decision to discharge water from the reservoirs was for public use.

32. Plaintiffs' property would not have flooded but for Defendant's decision to discharge water from the Addicks and Barker reservoirs.

33. Defendant's conduct constitutes a taking of Plaintiffs' property, since beginning on August 28, 2017 and continuing for days or weeks, water will continue to be released from the reservoirs, and Plaintiffs will be unable to return to their homes, causing damage to their personal and real property, and Plaintiffs will be deprived of the use, occupancy, and enjoyment of their property.

34. Defendant has not compensated Plaintiffs for the taking of their real and personal property.

## VII. RELIEF.

Plaintiffs Kenneth and Constance Smith ask the Court to enter an order:

A. declaring that Defendant's actions constitute a taking under the Fifth Amendment to the U.S. Constitution;

B. awarding just compensation in the amount of $850,00 or another amount to be determined at trial;

C. awarding Plaintiffs reasonable and recoverable litigation expenses and attorneys' fees;

D. awarding Plaintiffs pre- and postjudgment interest, to the fullest extent allowable; and

E. awarding other and further relief as equity and justice may require.

Respectfully submitted,

JOHNS MARRS ELLIS & HODGE LLP

Dated: September 8, 2017

/s/ Christopher S. Johns

Christopher S. Johns ("Attorney-in-Charge")
Texas Bar No. 24044849
500 Dallas Street, Suite 1350
Houston, Texas 77002
713-609-9503
713-583-5825 fax
cjohns@jmehlaw.com

*Attorneys for Plaintiffs Kenneth Lee Smith and Constance Smith*